## WELCH et al. v. HOLLAND et al.

No. 27475.   Oct. 9, 1936.

George H. Jennings, for petitioners.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for respondents.

PHELPS, J. The 1935 Session of the Oklahoma Legislature, by House Bill No. 241, art. 12, ch. 35 (p. 177, S. L. 1935), provided that:

"In Creek county, Okla., candidates for county commissioner shall be nominated from each commissioner's district in the manner provided by law and elected by the qualified voters of the county at large. No elector at such general election shall vote for more than one candidate from each district. The candidate from each district receiving the highest number of votes cast in the county at large shall be the commissioner-elect from such district."

In the general primary election held in Creek county, in July, 1936, J. K. Welch and Charley A. Dressler received the Democratic nominations for county commissioners in county commissioners' districts numbered 1 and 2, respectively. The election board has let the contract and is about to have the ballots printed for use in the general election on November 3, 1936. In having the ballots prepared they have ignored the above-quoted section of the 1935 Session Laws and are about to have the ballots printed with the names of the various candidates for county commissioners printed only on the ballots to be used in the precincts embraced in each county commissioner's district, leaving said names off the ballot except in the precinct from which each candidate was nominated. Plaintiffs have filed their original action in this court, praying for a writ of mandamus, directing the defendants, as chairman and members of the county election board of Creek county, to have their several names printed upon the ballots to be used throughout the entire county in each and every precinct therein.

The defendants file response to plaintiffs' petition in which they allege that the above-quoted section of the Session Law violates section 46 of art. 5 of the State Constitution, which provides that:

"The Legislature shall not, except as othwise provided in this Constitution, pass any local or special law * * * regulating the affairs of counties, cities, towns, wards, or school districts."

They further allege that said enactment violates section 59 of art. 5, which reads:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable no special law shall be enacted."

The parties stipulated as to all the facts, and the sole question at issue is whether in the passage of this bill the Legislature violated the above-quoted provisions of the Constitution.

The respondent calls our attention to Bradford v. Cole, 95 Okla. 35, 217 P. 470. In that case this court had under consideration chapter 229, Laws of 1923, wherein the Legislature attempted to create a consolidated school district for white pupils comprising a district formed out of territory existing in independent schools 36, 55, and 56 in Okmulgee county. In holding that this act violated the above section of our Constitution, we said:

"The defendants contend that the act under consideration does not regulate the affairs of the school district or regulate the management of public schools, but simply creates a new district out of three districts existing at the time of its passage and provides that the districts so organized shall be managed and conducted according to existing general laws of the state of Oklahoma, and hence the act is not in violation of the foregoing constitutional provision.

"It is conceded that the act in controversy is a special law, and that the provision of the Constitution for the enactment of special laws was complied with, and the only question is as to whether this act comes within one of the classes mentioned in article 5, section 46, of the Constitution, prohibiting the passage of special laws. The

answer to this question depends upon the construction given to the phrases 'regulating the affairs of school districts' and 'regulating the management of public schools.' It has been held that similar provision should receive a broad construction instead of a narrow or technical construction, and with the idea of carrying out the intention of the makers of the Constitution. In Hall v. Bell County (Tex. Civ. App.) 138 S. W. 178, the court had under consideration the constitutional provision prohibiting the passage of special laws 'regulating the affairs of counties, cities, towns, wards, or school districts' and in the syllabus the following language is used:

"'Held that the word "regulating," as used in the constitutional provision, should not be given a narrow or technical signification and that the act establishing the office of county auditor was an act regulating county affairs within such section, and hence the act amending the same by exempting Bell county was a special or local law regulating county affairs and was therefore unconstitutional.'

"This decision was affirmed by the Supreme Court of Texas in the case of Bell County v. Hall, 105 Tex. 558, 153 S. W. 121, and the following language was used:

"'In relieving Bell county from the operation of the general law, this act, in effect, changed the administration of its affairs in every particular provided by the general law, and thus by indirection regulated its affairs as effectually as though it had directly and affirmatively prescribed a different method for their management.'

"In Territory v. Gutierrez, 12 N. M. 254, 78 P. 139, the constitutional provision under consideration prohibited the passage of a special law regulating the affairs of counties, and in discussing the meaning of the word 'affairs' the court said:

"'A Constitution is not to receive a technical construction, like a common-law instrument or statute. It is to be interpreted so as to carry out the great principles of government, not to defeat them. Commonwealth v. Clark, 7 Watts & S. 127. * * * When it speaks of the "affairs" of a county, it means such affairs as affect the people of that county.'"

This question was again before us in Hudgins v. Foster, 131 Okla. 90, 267 P. 645, when we had under consideration chapter 107, S. L. 1927, which attempted to abolish township officers in 49 counties and retain them in the other 28 counties. In holding that act violative of section 59, art. 5, of the Constitution, supra, the opinion cites and quotes extensively from many opinions from various courts and reference is here made to the authorities therein cited.

This question was again before us in Roberts v. Ledgerwood, 134 Okla. 152, 272 P. 448, wherein the constitutionality of House Bill No. 358, passed by the 1927 Legislature, ch. 182, was under consideration. In the opinion many authorities were cited and discussed and reference is likewise here made to the authorities therein cited.

In support of petitioners' claim that the act in question is not violative of the above-quoted section of the Constitution, they cite and call to our attention C., R. I. & P. Ry. Co. v. Carroll, Brough, Robinson & Humprey, 114 Okla. 193, 245 P. 649; also Munroe v. McNeill, 122 Okla. 297, 255 P. 150; also School District No. 85, Kay County, v. School District No. 71, Kay County, 135 Okla. 270, 276 P. 186, but, as we view it, these cases are not controlling.

It is our conclusion that the act under consideration violates both section 46 of art. 5 and section 59 of art. 5 of the Oklahoma Constitution, and is therefore void and unenforceable. Having reached this conclusion, the writ is denied.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, CORN, and GIBSON, JJ., concur.