The STATE of Oklahoma ex rel. Charles NESBITT, Attorney General of Oklahoma, Plaintiff,

v.

The DISTRICT COURT OF MAYES COUNTY, State of Oklahoma and John Q. Adams, Judge of the District Court of Mayes County, State of Oklahoma, Defendants.

Marguerite BILLINGTON, Court Clerk of Mayes County, State of Oklahoma, Plaintiff in Error,

v.

L. L. WEAVER, Sheriff of Mayes County, Thos. E. Landrum, County Attorney of Mayes County, and Creekmore Wallace, County Judge of Mayes County, Defendants in Error.

Nos. 40844, 40865.

Supreme Court of Oklahoma.

Nov. 7, 1967.

As Corrected May 14, 1968.

Rehearing Denied May 14, 1968.

Charles Nesbitt, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for plaintiff and plaintiff in error.

Thomas A. Wallace, Sapulpa, for defendants and defendants in error.

McINERNEY Justice.

The principal question for decision in this consolidated cause is the constitutionality of H.B. 953 of the Twenty-Sixth Legislature, S.L. 1957, p. 109. This act, which bears an emergency clause, became law on May 21, 1957. It provides in substance that the county attorney, county judge and sheriff of each county of the state having a population of not less than 20,000 nor more than 20,400 as shown by the last preceding federal decennial census, and an assessed valuation of at least $15,000,000.00 shall receive, in addition to their regular annual salaries fixed by general law, a specified monthly stipend from the court fund of the county for the performance of certain non-germane duties imposed in the act.

By his opinion of October 21, 1957, the Attorney General separately considered the constitutionality of H.B. 953 (along with 98 similar acts passed by the 1957 Legislature) and declared it to be "an invalid local and special law." Its provisions have been carried neither into the official 1957 Cumulative Supplement to Oklahoma Statutes 1951 nor into the Oklahoma Statutes 1961 (adopted Jan. 29, 1963 by the enactment of 75 O.S.Supp. 1963, § 164). In the tables contained in Volume 3 of the Oklahoma Statutes 1961 the act under consideration is identified (at p. 1032) by a citation to the 1957 Session Laws and by note "Loc. & Spec." (local and special). The appendix to Title 19 of the Oklahoma Statutes Annotated, entitled "Local and Special Acts", contains the title of H.B. 953 (at p. 588) which is followed by a citation to the 1957 Session Laws and the note "This act held invalid. Op.Atty.Gen., Oct. 21, 1957.".

■ The court takes judicial notice that at the time of the enactment of H.B. 953, only Jackson County met the narrow standards prescribed by its provisions. That count, according to the 1950 federal decennial census (which last preceded

the passage of H.B. 953) had a population of 20,082; its assessed valuation for that year was $15,485,757.00.

For the purpose of deciding the principal issue herein we will assume that if the bill under consideration is free from constitutional infirmity Mayes County came within its purview when the 1960 federal decennial census became effective. According to that census Mayes County had a population of 20,073; its assessed valuation for 1960 was in excess of $15,000,000.00.

■ The provisions of Art. 5, § 59, Okl. Const., command that all "[l]aws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted." In order to be general in its nature and to have uniform operation a law must operate equally upon all the subjects within the class for which it was enacted although it may apply only to a designated class. But if a statute operates upon a class, the classification must be reasonable and pertain to some peculiarity in the subject-matter calling for legislation. It cannot be capricious or arbitrary. As between the persons and places *included* within the class upon which the law operates and those *excluded* from it there must be some distinctive characteristic warranting a different treatment and affording a practical and real basis for discrimination. Burks v. Walker, 25 Okl. 353, 109 P. 544; Roberts v. Ledgerwood, 134 Okl. 152, 272 P. 448, 449; Haas v. Holloman, Okl., 327 P.2d 655, 656.

■ Where a legislative act excepts from the operation of the general laws of this state one or more counties without any fixed basis for such discrimination and no reason appears why all should not be subject to the same rule, it is violative of Art. 5, § 59, Okl.Const. Hudgins v. Foster, 131 Okl. 90, 267 P. 645; Anderson v. Walker, Okl., 333 P.2d 570, 575. Local or special laws, as distinguished from those which are general and uniformly operative, are all laws that rest on a false or deficient classification. Their vice is that they do

not embrace all the class that they should naturally encompass but extend only to persons arbitrarily selected from a body of those who stand in a substantially identical relation to the subject of the law. They create preference and establish inequality by applying to persons, things and places possessed of certain attributes and excluding from their effect persons, things and places with not dissimilar characteristics. Barrett v. Board of Com'rs of Tulsa County, 185 Okl. 111, 90 P.2d 442. In short, special laws prohibited by Art. 5, § 59, Okl.Const., are those which apply to less than the whole of a class of persons, things or places standing upon the same footing or in substantially the same situation or circumstances and hence do not have uniform application. Fenimore v. State ex rel. Commissioners of Land Office, 200 Okl. 400, 194 P.2d 852. The all important factor in determining whether a bill is local or general is the basis of classification contained in it. If the basis *at the time of enactment* is arbitrary, unreasonable and without proper foundation in relation to the subject matter, then the bill is tainted by constitutional infirmity and must be declared a special and local act. Roberts v. Ledgerwood, supra [p. 451].

While counties and cities may, for legislative purposes, properly be classified on the basis of population, or population coupled with some other factor, such as assessed valuation, the classification must not be arbitrary but founded upon real and substantial distinctions, bear some rational relation to the subject matter and be uniform and general in its application. Haas v. Holloman, supra, 327 P.2d p. 656; 82 C.J.S. Statutes § 191, p. 309. An arbitrary or capricious classification is regarded as a subterfuge for the purpose of passing a special act under the guise of a general law. Key v. Donnell, 107 Okl. 157, 231 P. 546, 549.

It appears unnecessary for us to delve here into the question of whether the bill under consideration was processed as a general law or was introduced and passed as a special act in compliance with the publication requirements of Art. 5, § 32. That question is irrelevant here. While Art. 5, § 32 requires the legislature to publish notice in a specified manner before the intended introduction of a special or local act, it *does not authorize* the enactment of such laws upon subjects expressly prohibited by Art. 5, § 46. Sec. 32 simply provides a procedure to be followed in considering and passing local or special acts on subjects falling outside the prohibitory scope of § 46. The enactment of special or local acts expressly prohibited by § 46 is not to be deemed validated by compliance with the publication requirements of § 32. Chickasha Cotton Oil Co. v. Lamb & Tyner, 28 Ok. 275, 114 P. 333, 336; White v. Infield, 122 Okl. 4, 250 P. 81, 82; Wade v. Board of Com'rs of Harmon County, 161 Okl. 245, 17 P.2d 690, 692; Leach v. Board of Com'rs of Mayes County, 173 Okl. 270, 47 P.2d 596; Missouri-Kansas-Texas Railroad Company v. Coryell, Okl., 346 P.2d 935, 937.

The provisions of the act under consideration impose upon the affected officials duties which do not stand imposed on like officials in other counties of the state. By its terms the county attorney is required to "prepare and file all legal papers and pleadings, and to present evidence on behalf of the State * * * in proceedings for adjudication of delinquency * * *"; the county judge is required "to supervise" all juveniles on parole or probation and all dependent children who are wards of the court; and the sheriff is given the duties of supervising all persons other than juveniles who are on parole or probation.

Art. 5, § 46, Okl.Const. prohibits, among other things, the enactment of special or local laws *prescribing the powers and duties of county officers*, "except as otherwise provided in this Constitution." The last quoted phrase has been construed to exempt from the prohibitory scope of § 46 only "those specific cases in which local legislation" was authorized by some other provisions of the Constitution. Chickasha

Cotton Oil Co. v. Lamb & Tyner, supra. We find nothing in our fundamental law which authorizes the legislature to impose upon an arbitrarily selected group of county officials duties which do not stand imposed upon like officials in other, more populous counties. Sparks et al. v. Board of Library Trustees of Carter County, 197 Okl. 132, 169 P.2d 201, 204. Consequently, if H.B. 953 is in fact a local and special law it could not be regarded as valid, even though the legislature might have complied with the publication requirements of § 32.

We perceive of no sound reason why the officials in counties coming within the purview of H.B. 953 should be singled out for the performance of special added duties and be entitled to a supplemental stipend from the local court fund, when like officials in counties having a population substantially the same or higher but falling into a different valuation bracket are not authorized to earn higher emoluments in that manner. It follows that the population and valuation classification prescribed in the bill under consideration is purely arbitrary in the sense that there appear to be no distinctive characteristics upon which varying treatment of officials in the affected counties may be founded, and H.B. 953 must be regarded as a local and special law violative of Art. 5, §§ 46 and 59, Okl. Const. Re Bucher, County Atty, 162 Okl. 168, 20 P.2d 150; Thompson v. Stanley et al., 183 Okl. 445, 83 P.2d 386; Haas v. Holloman, supra; Williams v. Johnson, Okl., 396 P.2d 518, 521; Elias v. City of Tulsa, Okl., 408 P.2d 517, 520.

It is argued that certain "distinctive characteristics" of Mayes County "were developed in the course of the trial" which "clearly indicates the wisdom" of the act here under consideration. This seems to be without legal significance. Our inquiry is confined to, and cannot be extended beyond, that of measuring the basis of classification actually embodied in the bill itself (at the time of its enactment) by the permissible standards of our fundamental law. Roberts v. Ledgerwood, su-

pra. Moreover, the showing of some unexpressed local conditions peculiar to Mayes County would tend only to negative legislative intent to enact a general law in obedience to the command of Art. 5, § 59. Elias v. City of Tulsa, supra, 408 P.2d p. 521.

This consolidated cause invokes our cognizance of two distinct proceedings. The first of these was instituted here as an original action by the State of Oklahoma on the relation of the Attorney General. Its object was to prohibit the District Court of Mayes County from enforcing a judgment declaring H.B. 953 constitutional and the officials coming within its purview entitled to the specified stipend from the court fund. The judgment of the district court was rendered in a mandamus proceeding brought by the affected county officials of Mayes County who sought an order directing payment of their salary claims from the court fund. The second proceeding which forms a part of this consolidated cause is an appeal subsequently instituted from the same judgment by the Attorney General in the name of the Court Clerk of Mayes County. In her capacity as statutory custodian of the court fund, the clerk was defendant in the mandamus proceeding below; she declined to prosecute an appeal after the Attorney General had given notice of his intention to so proceed.

Several motions to dismiss have been filed in this cause. In the earliest of these motions it was urged that the issues sought to be litigated were moot because the clerk, defendant in the mandamus proceeding, had complied with the district court's judgment directing payment of the salary claims in suit. This motion was denied by order sheet entry containing full explanation of the court's ruling and the authorities relied upon. No leave was granted to re-present the argument in the brief on the merits. We adhere to our former disposition and decline to consider it further. Embry v. Villines, 175 Okl. 552, 53 P.2d 277, 279; Chicago, R. I. & P.

R. Co. v. American Airlines, Inc., Okl., 408 P.2d 789, 793.

The second motion challenged the standing of the Attorney General to prosecute the instant cause before this court. This motion, which was denied "subject to further consideration on the merits" is re-argued in the answer brief.

The Attorney General appears here at the request of the Governor. By the provisions of Art. 6, § 8, Okl.Const., the Governor is charged with faithful execution of the laws. Among other things, the terms of 74 O.S.1961, § 18c command the Attorney General as the chief law officer of the State, to participate, at the request of the Governor, before any tribunal in any proceeding in which the State may be interested; and when he so acts, the law itself empowers him to assume control of the litigation, "if he deems it advisable and to the best interest of the State."

The subject matter of this litigation is of legitimate interest to the State. The management, operation and liability of the court fund are matters within the peculiar province and control of the Legislature. The State has a legitimate interest in the distribution of that fund and the right to prevent, by intervention if necessary, the unlawful diversion of any money from it. Herndon, Judge v. Anderson, 165 Okl. 104, 25 P.2d 326, 329; Morrison v. Fry, 208 Okl. 239, 255 P.2d 270. While the trial court was charged with the responsibility of making an independent judgment of the issue presented, it is the duty of public officers with notice thereof to follow the opinion of the Attorney General until relieved of such duty by a court of competent jurisdiction or until this Court should hold otherwise. Rasure v. Sparks, 75 Okl. 181, 183 P. 495. In the exercise of his duty to see that our laws are faithfully and uniformly executed the Governor was clearly compelled to protect the legitimate interest of the State by directing that the Attorney General bring the present litigation to this court; and since the provisions of 74 O.S.1961, § 18c confer on the latter official the authority to *control* the management of litigation in which the State may be interested, he was free to assume complete dominion of the cause and bring the present proceeding regardless of the court clerk's election to abide by the lower court's judgment. If she did pay the claims while this appeal remained pending and a trial judge's order staying his judgment was in effect, she must be deemed to have acted at her own peril. In no event could she, by any acts of her own, unsanctioned and unacquiesced in by the Attorney General, defeat the right of the State to prosecute this appeal. Lucas v. First Nat. Bank of Pawnee, 171 Okl. 606, 43 P.2d 752; Oklahoma City-Ada-Atoka Railway Co. v. Del City, Okl., 392 P.2d 365, 367. In the absence of explicit legislative or constitutional expression to the contrary, the attorney general possesses complete dominion over every litigation in which he properly appears in the interest of the state whether or not there is a relator or some other nominal party. 7 C.J.S. Attorney General § 8d, p. 1230; 7 Am.Jur., Attorney General, § 15, p. 18.

The third motion seeks dismissal of this appeal as to one of the three county officials adjudged below to be entitled to a stipend from the court fund. It is submitted that this official has been dead longer than a year and no order of revivor has been entered within the period of one year from his demise. Movant overlooks, however, the provisions of 12 O.S.Supp. 1965 § 1081(b). Under its terms, if a party in whose favor a judgment is rendered dies after judgment, a motion to revive may be made by any party to the action "at any time before the judgment becomes dormant but it must be made before action is taken to enforce the judgment." No dismissal is hence required and the motion is denied.

Lastly, it is argued that the appeal should be dismissed because the record contains neither a journal entry of judgment nor an order denying new trial. This contention is also without substantial merit.

**708**

■ The instrument entitled "Findings of Fact and Conclusions of Law", which stands incorporated into the record, is amply effective as a judgment in this cause. Signed by the trial judge, it recites that the issues are found in favor of the plaintiffs who are entitled to the relief prayed. In the concluding sentence the court orders that a peremptory writ issue commanding the clerk to pay the claimed stipends.

■ While the order denying new trial did not initially appear in the record, this is not fatal. This court granted leave to incorporate it in a correction proceeding before the trial judge. The order was subsequently included in the record. Although counsel for the opposite parties did not have notice of the time correction proceedings were to be conducted below, this court afforded him ample opportunity to point out in what respect the order, as now incorporated, was objectionable. Since counsel has failed to respond, we assume that the order denying new trial speaks the truth. The correction proceeding was authorized (Oklahoma Turnpike Authority v. Kitchen, Okl., 337 P.2d 1081), and this court has plenary power to correct, by any method it sees fit, the record before it. Werfelman v. Miller, 180 Okl. 267, 68 P.2d 819, 820. The motion to dismiss appeal is accordingly denied.

Our disposition of the appeal in cause No. 40,865 operates to render moot the issues sought to be decided in the original action in cause No. 40,844.

The trial court's judgment is reversed with directions to deny the petition for writ of mandamus.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, BERRY and HODGES, JJ., concur.

LAVENDER, J., concurs in result.